UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROLANDO SERNA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-3034 |
| | § | |
| LAW OFFICE OF JOSEPH | § | |
| ONWUTEAKA, PC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER
## ON ATTORNEY'S FEES AND COSTS

Pending before the Court are Plaintiff's Motion for Attorney Fees and Costs and Defendants' Objections to Plaintiff's Motion for Attorney's Fees, Motion to Strike and Request for Oral Hearing.  Dkt. 66, 68.  Having considered the parties' filings, all responses and replies thereto, and the applicable law, the Court finds the Plaintiff's Motion for Attorney's Fees and Costs should be **GRANTED in part and DENIED in part**.  Accordingly, the Court awards **$72,133.50 in attorney's fees** and **$ 939.95 in costs** to Plaintiff.  The Court **OVERRULES** Defendants' objections and Defendants' motion to strike is **DENIED**.

### Background

The present lawsuit began in August 2011 when Rolando Serna, a Texas resident, filed a lawsuit in this Court against attorney Joseph Onwuteaka, individually, as well as Onwuteaka's law office and Onwuteaka's debt collection business, Samara Portfolio Management, LLC (collectively, "Defendants").  Serna's suit alleged that, in July 2010,

Onwuteaka violated the federal Fair Debt Collection Practices Act ("FDCPA") by filing a debt collection lawsuit against Serna in Harris County, Texas—even though Harris County was not a proper venue under the FDCPA. Serna's pleadings also alleged that Onwuteaka violated the Texas Deceptive Trade Practices Act ("TDCPA"). Serna filed his lawsuit in this Court on August 12, 2011, attaching it to his application to proceed *in forma pauperis* ("IFP"), which was denied. He refiled it on August 18, 2011. Onwuteaka answered, raising a number of affirmative defenses and bringing a counterclaim that alleged Serna's lawsuit was groundless and brought in bad faith.

This case has now been pending for almost three years. Only minimal discovery has been conducted in that time. Instead, both sides have submitted numerous filings including motions to strike, motions for sanctions, motions for summary judgment and responses. They have also filed multiple supplements to their previously filed motions and responses. Despite the flurry of briefing, the facts remained mainly undisputed and the primary issues in the case were relatively straightforward—was Serna's suit filed within the one-year time limit set by the FDCPA; did Onwuteaka violate the FDCPA by suing Serna in Harris County; and if so, what damages may Serna recover?

In June 2012, this Court addressed the first issue and found that Serna's FDCPA suit was not timely. As this Court noted in its Memorandum, the Fifth Circuit had not yet addressed the question of whether a violation of the FDCPA's venue provision occurred at the time the debt collection lawsuit was filed, or whether it occurred at the time the alleged debtor was served with process. After reviewing other cases and the language of the statute, this Court held that an FDCPA violation occurred at the time a debt collection

suit was filed in the improper venue. Dkt. 41. Accordingly, summary judgment was granted in favor of Defendants. *Id.* Serna appealed to the Fifth Circuit, who reversed and remanded, holding that the FDCPA violation occurred at the time service, and therefore, Serna's suit had indeed been filed within the applicable time limit. *See Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 445 (5th Cir. 2013) ("[T]he FDCPA's remedial nature compels the conclusion that a violation includes both filing and notice."). On remand, this Court granted summary judgment in favor of Serna, finding that the summary judgment evidence established Defendants violated the FDCPA by filing a debt collection lawsuit in an improper forum. Dkt. 65. Serna was awarded $1,000—the maximum amount of statutory additional damages—as well as his "reasonable costs and attorney's fees" under the FDCPA. *Id.*

Serna then filed a motion seeking $78,475.00 for attorney's fees and $939.95 for court costs. Dkt. 66. To support the request, Serna attached three exhibits: (A) a Declaration by Michael E. Ureña and accompanying billing statements; (B) a Declaration by Christina E. Trejo and accompanying billing statements; and (C) a Declaration of Richard Tomlinson.

Defendants filed objections to Serna's request for fees and moved to strike Serna's evidence. Dkt. 68. On February 25, 2014, the Court held a hearing at which Ureña, Trejo, and Onwuteaka were in attendance. During the hearing, Onwuteaka called Ureña as an adverse witness regarding the amount of reasonable and necessary amount of attorney's fees in the case. At the close of the hearing, upon oral motions from the

parties, Serna designated Ureña, Trejo, and Tomlinson as his attorney's fee experts, and Onwuteaka designated himself as Defendants' attorney's fees expert.

After the hearing, Defendants filed a memorandum asserting additional legal grounds for the denial of attorney's fees. Dkt. 75. Serna filed a supplement to his motion for attorney's fees, amending the total requested amount to $80,145.00 for attorney's fees and $939.95 for costs. Dkt. 77. The pending objections and motions are now ripe for consideration.

## Analysis

### A. Defendants' Objections and Motion to Strike Attorney's Fees Evidence

Defendants first object to all of the evidence Serna submitted to support his request for attorney's fees. Defendants seek to strike this evidence because he argues (1) Serna did not timely designate Ureña, Trejo, and Tomlinson as his expert witnesses on attorney's fees; (2) Serna did not designate Ureña, Trejo, and Tomlinson as witnesses in response to an interrogatory; (3) Serna did not itemize attorney's fees as an item of damages in an interrogatory response; and (4) Serna did not produce all supporting documentation regarding attorney's fees incurred in a response to a Request for Production.

Defendants' objections regarding the timeliness of Serna's designation of attorney's fees experts are **OVERRULED**. Generally, expert witness designations must be provided by the deadlines set out in the scheduling order, and tardy designations will result in the striking of any evidence submitted by that expert. FED. R. CIV. P. 26 (a)(2)(D). However, designations of experts on attorney's fees are treated differently.

4

*See, e.g., Wright v. Blythe-Nelson,* 2001 U.S. Dist. LEXIS 9606, 2001 WL 804529, at *6 (N.D. Tex. July 10, 2001) (noting, "In most instances . . . attorney's fees are decided by the court on motion filed after the entry of judgment" and that "[a]ttorneys who represent parties against whom such fees are sought are not surprised by expert testimony because they can usually expect that opposing counsel will attempt to prove his attorney's fees and because they are themselves experts on the subject."). *See also Straus v. DVC Worldwide, Inc.,* 484 F.Supp. 2d 620, 633 (S.D. Tex. 2007) (denying motion to strike untimely designation of experts on attorney's fees, finding that designation did not prejudice defendant because "fee claims are generally resolved at the close of the case, after both liability and damages have been determined"); *see also Whatley v. Creditwatch Services, Ltd.,* 2014 WL 1287131, at *3 (E.D. Tex. March 31, 2014) (overruling objection when plaintiff seeking attorney's fees failed to designate an expert).

In this case, Defendants were not prejudiced by Serna's late designation of attorney's fees experts because it was clear from the very beginning of this lawsuit that Serna sought his attorney's fees. Serna's pleadings and the FDCPA both specifically mention attorney's fees as a remedy. Dkt. 1 at 4. Further, Defendants received Serna's attorneys' billing records and declarations 39 days before the hearing on attorney's fees. At that hearing, Onwuteaka called Serna's lawyer, Ureña, as an adverse witness, and examined him for almost two hours regarding Serna's attorney's fees and the billing records. Any possible prejudice caused by an untimely designation was thus cured.

Similarly, Defendants' objections regarding Serna's alleged failure to fully respond to discovery requests regarding attorney's fees are **OVERRULED**. In addition

5

to the detailed billing records and declarations attached to the motion for fees, Serna provided responsive documents on May 11, 2012—over eighteen months before the attorney's fees hearing. These documents included the fee agreement with his attorneys. Further, despite being aware that Serna's pleadings sought attorney's fees and that such an award was permissible under the FDCPA, Defendants never brought Serna's alleged failure to itemize attorney's fees as an element of his damages to the Court's attention, nor did Defendants file a motion to compel more complete discovery responses. Under these circumstances, Defendants cannot now assert these allegedly incomplete responses as a basis for denying Serna's requested attorney's fees. As courts have explained, "[t]he Federal Rules are not intended as traps or 'gotchas'" to be used by litigants. *Conklin v. Novartis Pharmas. Corp.*, 2012 WL 4127295 (E.D. Tex. Sept. 18, 2012). Accordingly, the Court will not strike Serna's evidence regarding his attorney's fees, and the Court will consider this evidence in ruling on his pending motion.

## B. Serna's Request for Attorney's Fees and Costs

A plaintiff in a "successful action to enforce [FDCPA] liability" is entitled to recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C.A. § 1692k. The Court determines a "reasonable attorney's fee" by first calculating the appropriate "lodestar" amount, *i.e.,* the number of hours reasonably expended on the litigation by the movant's attorney, multiplied by that attorney's reasonable hourly billing rate. *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 799 (5th Cir. 2006); *see also Szijjarto v. McCarrell*, 2014 WL 555122, at * 2 (S.D. Tex. Feb. 12, 2014) (using lodestar analysis to determine reasonable attorney's fee in

6

FDCPA case); *Whatley v. Creditwatch Services, Ltd.*, 2014 WL 1287131, at *3 (E.D. Tex. March 31, 2014) (same).

Serna, as the party seeking fees, has the burden to show the reasonableness of the hours billed and to prove his attorneys exercised "billing judgment." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).   In setting a reasonable billing rate, courts consider that attorney's regular rates as well as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).  Where "the attorney's normal billing rate is within the range of market rates for attorneys with similar skill and experience, and the trial court chooses a different rate, the court must articulate its reasons for doing so." *Islamic Center of Miss. v. Starkville*, 876 F.2d 465, 469 (5th Cir. 1989).  "Determination of the reasonable hourly rate for a particular community is generally established through affidavits of other attorneys practicing there." *Chisholm v. Hood*,  90 Fed. App'x. 709, 710 (5th Cir. 2004); *see also Watkins v. Input/Output, Inc.,* 531 F.Supp.2d 777, 784 (S.D. Tex. 2007) ("The evidence to support a hourly rate entails more than an affidavit of the attorney performing the work but must also address the rates actually billed and paid in similar lawsuits.").

To establish the reasonable of the number of hours billed, a fee applicant must produce "documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan,* 448 F.3d at 799.  When a plaintiff fails to include such evidence of billing judgment, a court should reduce the fee award by a percentage accordingly. *Id*.

7

Once the lodestar is determined, courts may adjust the figure upward or downward as necessary to make the award of attorney's fees reasonable, while ensuring the fee award does not provide a windfall to the plaintiff. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Watkins*, 7 F.3d at 457. Although courts have "broad discretion in setting the appropriate award of attorney's fees," there is a "strong presumption" that the lodestar amount is reasonable and should only be modified in exceptional cases. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Saizan*, 448 F.3d at 800. The Court's decision whether to make an adjustment to the lodestar figure is guided the factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The twelve factors include:

1. The time and labor required to represent the client(s);

2. The novelty and difficulty of the issues in the case;

3. The skill requisite to properly perform the legal services;

4. Preclusion of other employment by the attorney due to acceptance of the case;

5. The customary fee charged for those services in the relevant community;

6. Whether the fee is fixed or contingent;

7. The time limitations imposed by the client or circumstances;

8. The amount involved and results obtained;

9. The experience, reputation, and the ability of attorney(s);

10. The undesirability of the case;

11. The nature and length of the professional relationship with the client; and

12. Awards in similar cases.

The court is to give "special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). However, the most consideration is given to the "degree of success obtained." *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003) (citing *Romaguera v. Gegenheimer*, 162 F.3d 893, 896 (5th Cir. 1998)). Moreover, "[t]he lodestar may not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan*, 448 F.3d at 800 (citing *Migis*, 135 F.3d at 1047).[1] At least four of the *Johnson* factors are held to be generally subsumed into a proper lodestar calculation: the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993).

### 1. Determining the Lodestar

In this case, Ureña billed at a rate of $300 per hour for 137.3 hours of services in this Court and 106.1 hours in the Fifth Circuit. Trejo billed at a rate of $250 per hour for 27.8 hours of services in this Court and .7 hours in the Fifth Circuit. Dkt. 77. Thus, Ureña accounted for $73,020 of the fees and Trejo $7,125. Cumulatively, Serna seeks to recover $80,145 in attorney's fees and $939.95 in costs for the underlying matter. *Id.*

---

[1] Additionally, as noted by the Fifth Circuit, "[t]he Supreme Court has barred any use of the sixth [*Johnson*] factor." *Walker v. United States Dep't of Housing & Urban Dev.*, 99 F.3d 761, 772 (5th Cir. 1996) (citing *City of Burlington v. Dague*, 505 U.S. 557, 567, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)).

### a. Michael Ureña's Reasonable Hourly Rate

Michael Ureña has been licensed to practice law in Texas for over 21 years. He is the Team Manager for the Disability Rights section of Texas RioGrande Legal Aid, and has considerable experience in consumer rights litigation. In addition to his experience in Texas state and federal district courts, he has appeared before the Fifth and Eleventh Circuits of the United States Courts of Appeals. Ureña stated that it was his belief that $300 per hour is a reasonable rate for an attorney with his experience. Another attorney, Richard Tomlinson, also submitted an expert declaration stating that he had been licensed in Texas since 1979, he was familiar with the prevailing rates for the Southern District of Texas, and that $300 per hour was a reasonable hourly rate for an attorney with Ureña's qualifications.

Based upon this evidence, as well as the Court's own experience in the relevant community, case law and other authorities, the Court finds that $300 per hour is a reasonable hourly rate for an attorney of Ureña's skill and expertise in the Southern District of Texas. *See Memon v. Pinnacle Credit Servs., LLC*, 4:07-CV-3533, 2009 WL 6825243 (S.D. Tex. May 21, 2009) ("The range of market rates for lawyers in the Southern District of Texas working on debt collection cases encompasses a $300–$350/hr rate for an experienced attorney."); *Jane Roe/Rachel V. Rose v. BCE Technology Corp.* 2014 WL 1322979, at *3 (S.D. Tex. 2014) ("Courts in and around Houston have found hourly rates between $200 and $600 to be reasonable after considering the experience of the lawyer, the reputation of the firm, and the complexity of the case."); *Whitney Bank v. Hancock*, 2013 WL 1404822, at *3–4 (S.D. Tex. Apr. 5, 2013) (awarding fees at hourly

rates of approximately $450 to $475 for a commercial litigator with 23 years of experience); *Chaparral Texas, L.P. v. W. Dale Morris, Inc.*, 2009 WL 455282, at *5 (S.D. Tex. Feb. 23, 2009) (awarding fees at hourly rates of approximately $400 for a commercial litigator with 21 years of experience); *see also* STATE BAR OF TEXAS DEPARTMENT OF RESEARCH AND ANALYSIS 2011 HOURLY FACT SHEET, *available at*: http://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Tre nds&Template=/CM/ContentDisplay.cfm&ContentID=20499.[2]

### b. Christina Trejo's Reasonable Hourly Rate

Christina Trejo has been licensed to practice law in Texas for over 17 years. She is the Team Manager for the Torts and Civil Litigation Team of Texas RioGrande Legal Aid, and she also has considerable experience in consumer rights litigation. She has ample experience in Texas state and federal district courts. Trejo stated that it was her belief that $250 per hour is a reasonable rate for an attorney with her experience. Another attorney, Richard Tomlinson, also submitted an expert declaration stating that he had been licensed in Texas since 1979, he was familiar with the prevailing rates for the Southern District of Texas, and that $250 per hour was a reasonable hourly rate for an attorney with Christina Trejo's qualifications.

Based upon this evidence, as well as the Court's own experience in the relevant community, case law and other authorities, the Court finds that $250 per hour is a

---

[2] The State Bar of Texas Department of Research & Analysis compiles a bi-annual report detailing attorneys' self-reported hourly rates by years in practice, location, and type of practice, and the Court hereby takes judicial notice of that report regarding the rates of local attorneys in 2011.

reasonable hourly rate for an attorney of Trejo's skill and expertise in the Southern District of Texas. *See Memon v. Pinnacle Credit Servs., LLC*, 4:07-CV-3533, 2009 WL 6825243 (S.D. Tex. May 21, 2009) ("The range of market rates for lawyers in the Southern District of Texas working on debt collection cases encompasses a $300–$350/hr rate for an experienced attorney."); *Jane Roe/Rachel V. Rose v. BCE Technology Corp.* 2014 WL 1322979, 3 (S.D. Tex. 2014) ("Courts in and around Houston have found hourly rates between $200 and $600 to be reasonable after considering the experience of the lawyer, the reputation of the firm, and the complexity of the case."); *Whitney Bank v. Hancock*, 2013 WL 1404822, at *3–4 (S.D. Tex. Apr. 5, 2013) (awarding fees at hourly rates of approximately $450 to $475 for a commercial litigator with 23 years of experience); *Chaparral Texas, L.P. v. W. Dale Morris, Inc.*, 2009 WL 455282, at *5 (S.D. Tex. Feb. 23, 2009) (awarding fees at hourly rates of approximately $400 for a commercial litigator with 21 years of experience); *see also* STATE BAR OF TEXAS DEPARTMENT OF RESEARCH AND ANALYSIS 2011 HOURLY FACT SHEET, *available at*: http://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Tre nds&Template=/CM/ContentDisplay.cfm&ContentID=20499.

### c. Number of Hours Reasonably Expended by Ureña and Trejo.

Ureña and Trejo submitted their time sheets as exhibits to Serna's fee request. This Court has reviewed all of the pages submitted, including 188 time entries by Ureña and 44 time entries by Trejo. Dkt. 66, Ex. A–B; Dkt. 77. The submitted billing records reflect a substantial degree of detail. Time was calculated by the tenth of the hour (*i.e.*,

six minute blocks), separated by counsel (Ureña or Trejo) and by stage of litigation (*i.e.*,

"First Judgment," "Appeal," or "Remand to Current").

The entries are also fairly specific as to the service performed in each entry. A

typical excerpt from Ureña's sheets reads as follows:

| Date | Services Performed | Staff | Hours | Hr Rate | Amount |
|------|--------------------|-------|-------|---------|--------|
| 11/21/2013 | Reviewed e-mail from opc re: settlement offer | Michael E. Urena | 0.1 | 300.00 | 30.00 |
| 11/21/2013 | Legal research re: FDCPA additional damages when actual damages not proved | Michael E. Urena | 1.4 | 300.00 | 420.00 |
| 11/21/2013 | Legal research re: FDCPA additional damages when actual damages not proved | Michael E. Urena | 1.8 | 300.00 | 540.00 |
| 11/22/2013 | Interviewed client re: Defs settlement offer; settlement options | Michael E. Urena | 0.2 | 300.00 | 60.00 |
| 11/22/2013 | Draft and send email to opc re: settlement negotiations | Michael E. Urena | 0.1 | 300.00 | 30.00 |
| 11/24/2013 | Drafted begin to brief issue of FDCPA additional damages when actual damages not proved | Michael E. Urena | 4.1 | 300.00 | 1230.00 |
| 11/25/2013 | Drafted reply brief re: FDCPA additional damages when actual damages not proved | Michael E. Urena | 3.1 | 300.00 | 930.00 |
| 11/25/2013 | Drafted reply brief re: attorney fees and costs | Michael E. Urena | 0.6 | 300.00 | 180.00 |
| 11/26/2013 | Legal research re: Decisions in 6th cir. COA & DCs re: awarding statutory damages when no actual damages | Michael E. Urena | 1.5 | 300.00 | 450.00 |
| 11/26/2013 | Drafted Edit argument re: awarding statutory damages when no actual damages | Michael E. Urena | 0.3 | 300.00 | 90.00 |
| 11/28/2013 | Reviewed Defs' Supplemental Response | Michael E. Urena | 0.2 | 300.00 | 60.00 |

Dkt. 66, Ex. A-2 at 9. Trejo's sheets are similar.

Additionally, Ureña and Trejo expended some effort to review the time sheets prior to submitting them to the Court, removing several entries that they felt reflected "duplication" of efforts between co-counsel or were otherwise unnecessary. Dkt. 66 at 4. Finally, the time sheets show that counsel undertook to omit charges for their work on Serna's state law DTPA claim that was voluntarily non-suited. *Id.* They also did not charge for travel time, drafting an unsuccessful motion to strike, drafting discovery that was not responded to, drafting pleadings that were not filed, or finalizing Serna's discovery responses. *Id.*

The Court also considers the tenor of this particular case, noting that both sides took great care to defend their respective positions. Some of the pleadings, by Defendants in particular, reflect a "scorched earth" strategy that resulted in additional time being required by Serna's attorneys. For example, Defendants' answer, in additional to a general denial and a laundry list of affirmative defenses, also asserted a counter-claim against Serna alleging that Serna's lawsuit was brought bad faith and seeking "attorney's fees, costs, and sanctions" against Serna. Such pleadings resulted in Serna having to address these affirmative defenses in his motion for summary judgment, out of an abundance of caution, even if such affirmative defenses (including qualified immunity and waiver) were at best marginally related to the facts of this case. *See* Dkt. 8, ¶ 9–17 (Defendant's Original Answer and Counterclaim). Defendants also moved for summary judgment in his favor on his affirmative defenses twice, thus requiring Serna to respond. For example, in their Second Motion for Summary Judgment, Defendants argued that Serna's claim could not be brought because Serna had agreed to arbitration.

In support of this argument, Defendants cited the underlying promissory note which, on its face, clearly did not contain any arbitration clause whatsoever. Dkt. 30.

The Court recognizes that the Defendants were entitled to aggressively defend this action. However, the end result of Defendants' strategy was to increase the costs and expense of this litigation. The Court takes into account such practices when determining the reasonableness of Ureña and Trejo's time billed. "[D]efense counsel cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Gradisher v. Check Enforcement Unit, Inc.*, 2003 WL 187416 (W.D. Mich. Jan. 22, 2003). "Having wrongfully kicked the snow loose at the top, [Defendants] must bear the consequences of the avalanche at the bottom." *Schwarz v. Folloder*, 767 F.2d 125, 134 (5th Cir. 1985).

The Court also recognizes that this lawsuit raised issues of first impression that required Serna's counsel to spend more time on preparing and presenting this case than a typical FDCPA case. Contrary to Defendants' arguments, this dispute cannot be described as a dispute over a "simple issue of filing a lawsuit in the wrong county." Dkt. 75, ¶ 4i. Instead, this action presented at least three issues of first impression in this Circuit—the triggering of the FDCPA's statute of limitations, the availability of Federal Rule of Civil Procedure 6(d) to extend the viability of Serna's claim for an additional three days after his application to proceed *in forma pauperis* was denied, and whether an

FDCPA plaintiff may recover additional statutory damages without first establishing actual damages. Serna and his attorneys ultimately prevailed on each of these issues.[3]

However, the Court's independent review of the time records submitted, the pleadings, and the record in this case leads it to conclude that some of the time charged by Serna's attorneys was not reasonable or was duplicative, and that Serna therefore has not demonstrated adequate billing judgment by his attorneys. For example, there is a substantial amount of overlap of issues discussed and authorities cited in Serna's pleadings and briefing—particularly in Serna's Response to Defendants' Motion for Summary Judgment, Dkt. 22, Serna's Second Supplemental Response to Defendants' Motion for Summary Judgment, Dkt. 28, and Serna's Notice of Appeal, Statement of Issues and Appellant's Brief filed in the Fifth Circuit. The primary issues in these pleadings were whether Serna's complaint was filed within the FDCPA's statute of limitations and whether Serna's unsuccessful application for IFP tolled that deadline. Despite the substantial overlap in issues and cases relied upon, Serna's attorneys recorded 28.5 hours to prepare, research, and draft the 11-page Response; then an additional 19 hours to prepare, research, and draft the 10-page Second Supplemental Response; and then 62 hours to prepare, research, and draft Serna's Notice of Appeal, Statement of

---

[3]    At the hearing, Onwuteaka argued that the Serna's attorney's fees are unreasonable because "95% of the work" in this case related to the statute of limitations issues and these issues were created by the "late" filing of Serna's petition, Ureña testified that, after his initial client interview with Serna, he spent time investigating and preparing the case, in compliance with the pre-suit investigation requirements of Federal Rule of Civil Procedure 11. Additionally, the Fifth Circuit has upheld Serna's argument that his suit was timely filed under the FDCPA and the Federal Rules of Civil Procedure. Accordingly, the Court overrules this objection.

Issues and Brief submitted to the Fifth Circuit.[4]   There is a similar amount of overlap between Serna's Motion for Summary Judgment, part of which addressed Defendants' various affirmative defenses, Dkt. 31, and Serna's Response to Defendants' Second Motion for Summary Judgment, Dkt. 33.   Serna's attorneys recorded 22.5 hours to research and draft the 27-page Motion for Summary Judgment, and 13.8 hours to draft the 9-page Response to Defendants' Second Motion for Summary Judgment. Additionally, Serna's attorneys billed 45 total hours for preparing for a summary judgment hearing and subsequent oral argument before the Fifth Circuit—even though the issues were substantially the same in both proceedings, and the briefing had a substantial overlap. *See, e.g., Black v. SettlePou, P.C.,* 2014 WL 3534991, at *6 (N.D. Tex. 2014) (on remand, finding total amount of hours billed duplicative because "both of the issues raised on appeal were extensively researched and briefed before this Court prior to the appeal being taken").

Other examples of a lack of billing judgment include an entry of 3.2 attorney hours for "document management," *i.e.,* clerical work collecting and collating Serna's exhibits to the summary judgment record; an entry of 6.9 hours for a discovery dispute that was caused by Serna sending untimely discovery requests to Defendants; time billed for vague tasks such as "Reviewed Order" and "Preparation for oral argument"; and time spent on unnecessary briefing in support Serna's notice of his non-suit on his DTPA claims.

---

[4] The Court's page count is taken from the District Court's CM/ECF system, and thus includes the double-spaced case heading, full signature block for both attorneys, and certificate of service contained in each of these pleadings.

"The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Saizan*, 448 F.3d at 799.  In other words, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Villegas v. Regions Bank*, 2013 WL 76719, at *4 (S.D. Tex. Jan. 4, 2013) (J. Rosenthal); *see also  Preston Exploration Co. v. GSP,* LLC, 2013 WL 3229678 (S.D. Tex. June 25, 2013) (reducing requested fees by 20% for lack of billing judgment); *Peak Technical Services, Inc. v. Land & Sea Engineering, LLC,* 2012 WL 3234203, at *8 (S.D. Aug. 6, 2012) (reducing requested fees by 50%);   *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litigation*,  851 F.Supp.2d 1040, 1087 (S.D. Tex. 2012) (applying lodestar analysis, lack of evidence of billing judgment supported 10%-15% reduction in the number of hours billed).  This Court's detailed analysis of Serna's billing records leads it to conclude that a 10% reduction of hours is warranted to account for the lack of evidence of billing judgment by Serna's attorneys.

### 2.  Serna's Requested Enhancement: *Johnson* Factors

Serna has requested an enhancement to the lodestar based on the following factors: (2) the novelty and the difficulty of the issues in the case; (3) the skill required; and (8) the amount involved or result obtained.  Dkt. 66 at 18–23.  The Court has thoroughly considered these three factors in assessing the lodestar.  Therefore, it declines to grant an adjustment.  *Saizan*, 448 F.3d at 800 (citing *Migis*, 135 F.3d at 1047) ("The lodestar may

not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting.").

### 3. Onwuteaka's Challenges

Defendants argue that Court should not consider the lodestar amount requested by Serna because (1) Ureña and Trejo did not produce contemporaneous billing records; (2) Ureña and Trejo are entitled to bill only at a rate of $150 per hour; (3) Ureña and Trejo are not entitled to recover fees for their work at the appellate level; and (4) the billing records contain excessive, redundant, and unnecessary hours. Dkt. 75. The Court addresses each of these arguments below.

#### a. "No Contemporaneous Records"

First, Defendants argue that the amount of attorney's fees requested should be substantially reduced or denied because "plaintiffs have produced no contemporaneous billing records to enable the court to determine their reasonable and necessary attorney's fees" and "[p]laintiff's attorneys have not been forthcoming," Dkt. 75, ¶ 1.

Defendants do not specify what types of information Serna and his attorneys have failed to provide. Accordingly, in light of the documentation submitted in support of the fee request and the evidence at the hearing, the Court concludes that Ureña and Trejo recorded their time "in a manner that will enable a reviewing court to identify distinct claims" that the submitted time sheets are sufficient for its determination of attorney's fees. *Hensley*, 461 U.S. at 437.

### b. "No Experience"

Next, Defendants argues that Ureña and Trejo should only be billed at a rate of $150 per hour because they have "no experience" in FDCPA cases. Dkt 75, ¶ 2. Onwuteaka produced affidavit testimony stating that "$150.00 should be more than fair" as an hourly rate for Ureña and Trejo's services, because this is his assessment of the reasonable market rate "in an FDCPA case of a Lawyer [sic] with no experience with such case." Dkt 75, ¶ 2. Aside from the vague and conclusory statements in Onwuteaka's Declaration regarding Ureña and Trejo's level of experience, Defendants fails to provide any facts supporting this assertion. Dkt. 75-1 (Supplemental Declaration Under Penalty of Perjury). Accordingly, in light of its foregoing analysis, the Court finds that $300.00 per hour for Ureña and $250.00 per hour for Trejo are reasonable hourly rates for the Southern District of Texas.

### c. Attorney's Fees for Appeal

Relying on the holding in *Bode v. United States*, 919 F.2d 1044 (5th Cir. 1990), Defendants argues that the Court should not award any attorney's fees or costs incurred on appeal, because he was "substantially justified" in raising his statute of limitations defense in the prior phase of litigation and pursuing this defense on appeal period. Dkt. 75, ¶ 3. Defendants' reliance in this holding is completely misplaced. *Bode* concerns the award of attorney's fees arising from tax litigation. The standard discussed by the *Bode* court—that appellate attorney's fees should not be granted to plaintiffs when the defendant's position in the court below was "substantially justified"—is not the standard for attorney's fees in FDCPA litigation. In fact, in *Bode*, the court discusses such a

20

standard only because it is a statutorily mandated test from the Internal Revenue Code, applicable only to tax litigation where the IRS is a defendant. *See generally Bode*, 919 F.2d 1044.

Attorney's fees may be awarded to a prevailing plaintiff for both district-level and appellate attorney's fees in an FDCPA cases. *See, e.g., Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 44 (5th Cir. 2008) (ordering the trial court to award attorney's fees to the plaintiff for the underlying case, the appeal, and the remand of an FDCPA case). The FDCPA is unambiguous regarding a prevailing plaintiff's right to attorney's fees. 15 U.S.C.A. § 1692k ("[I]n the case of *any* successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.") (emphasis added). It was reasonable and prudent for Serna to appeal the Court's prior judgment on an issue which the Fifth Circuit described as one upon which "reasonable minds could differ." 732 F.3d 440, 443. Through the appeal, Serna revived his cause of action and subsequently became a prevailing plaintiff in this Court. Accordingly, he is entitled to seek an award of his appellate attorney's fees in this case.

### d. General Challenge of "Excessive, Redundant, and Unnecessary Hours"

Finally, Defendants globally argue that the lodestar should be reduced because Ureña and Trejo billed an "excessive, redundant, and unnecessary" amount of hours. Dkt. 75, ¶ 4. Defendants argue that the billing records contain "countless unnecessary time . . . spent in research and drafting and responding to motions." Specifically,

Defendants argue that "[t]ime spent responding to defendants' motion for protective order were all unnecessary." They argue that "[d]efense counsel has spent a maximum of 32 hours at best, including appeals, and excluding travel time." The Court finds these arguments are without merit. Even a cursory review of the record reveals that the very contentious nature of this litigation and the novel legal issues raised by the facts of this case required Serna's attorneys to expend considerable time and expense—far beyond a mere 32 hours—to prevail in this lawsuit.

### e. Challenges to Specific Entries

Defendants' challenges to specific billing entries as "excessive, redundant, and unnecessary" are also unsupported by the record. Defendants generally argue that hours should be excluded because "the Petition includes various unnecessary claims some of which were later dismissed." However, a review of the complaint reveals that the only claim that was dismissed was a single DPTA claim and that Serna's attorneys have attempted to exclude all costs associated with the claim in their request for attorney's fees. Likewise, Defendants generally argue that all entries billed before Serna signed the August 12, 2011 Representation Agreement should be excluded because this work was done before either Ureña or Trejo had agreed to represent Serna. However, at the hearing Ureña testified that, prior to meeting Serna in person on August 8, 2011, they had spoken and reached an oral agreement for representation. Defendants provide no countervailing evidence that such an agreement did not exist or was invalid.

### f.  Proportionality

Finally, Defendants argue that the requested attorney's fees are excessive because all that Serna obtained out of this litigation was $1,000, far less than the almost $80,000 in requested fees.  The Court finds this argument unpersuasive.  The Court acknowledges that the attorney's fees awarded are much greater than the plaintiff's $1,000 award.  However, as noted above, this disparity was in large part due to Defendants' litigation strategy which required Serna's attorneys to commit additional litigation resources to overcome.  Further, as the courts have long held, disproportion between the amount of attorney's fees sought and the damages recovered in the lawsuit alone does not render the award of attorney's fees excessive.  *See Memon*, 2009 WL 6825243 (citing *Northwinds Abatement v. Employers Ins.*, 258 F.3d 345, 355 (5th Cir. 2001)) (internal citations omitted).  As the Fifth Circuit recently noted, "[w]hile a low damages award is one factor which the court may consider in setting the amount of fees, this factor alone should not lead the court to reduce a fee award.  Accordingly, . . . it would be an abuse of discretion for the district court to reduce [an] attorney's fee award solely on the basis of the amount of damages obtained."  *Black v. SettlePou, P.C.*, 732 F.3d 492, 503 (5th Cir. 2013) (internal citations omitted).

Further, consumer-protection statutes such as the FDCPA are "designed to make it possible for consumers to prosecute violations of the law and thus incentivize defendants to behave in a way that does not violate consumers' legitimate interests."  *Phenow v. Johnson, Rodenberg & Lauinger, PLLP*, 766 F. Supp. 2d 955, 959 (D. Minn. 2011); *see also Loggins v. Delo*, 999 F.2d 364, 368 (8th Cir. 1993) (acknowledging that

"proportionality between the amount of damages and fee awards was not required"); *see also Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

### 4. Costs

Taxable court costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of the deposition transcript; (3) printing costs and witness fees; (4) fees for copies of papers necessarily obtained for use in the case; (5) certain docket fees; and (6) compensation of court appointed experts and interpreters.  28 U.S.C. § 1920.  Serna seeks to recover the $ 350.00 he paid to file his Original Complaint in this court, and $589.95 in costs and expenses awarded by the Fifth Circuit Court of Appeals. The Court finds these are appropriate requests, and hereby awards Serna these costs.

### Conclusion

Based on the foregoing reasons, it is hereby **ORDERED** that Serna's Motions for Attorney Fees and Costs is **GRANTED in part and DENIED in part**.  Serna is awarded **$ 72,133.50 for attorney's fees** and **$ 939.95 for costs.**

SIGNED at Houston, Texas on this ___ day of  July 2014.

GEORGE C. HANKS, JR.
UNITED STATES MAGISTRATE JUDGE

24